**John GRAY, Appellant,**

v.

**CITY OF FLORISSANT, Missouri, Respondent.**

No. 40537.

Missouri Court of Appeals, Eastern District, Division Three.

Aug. 28, 1979.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 15, 1979.

Gary H. Lange, Bartley, Goffstein, Bollato & Lange, Clayton, for appellant.

V. Jack Muehlenkamp, Dellwood, for respondent.

REINHARD, Presiding Judge.

Plaintiff appeals from an order of the circuit court affirming the Personnel Commission of the City of Florissant in its disciplinary action against plaintiff for violation of Section 14–30, Physical Requirements for Commissioned Personnel, Manual of Policies and Procedures of the Florissant Police Department.

Plaintiff became a police officer with the City of Florissant on July 10, 1967. The record reveals that plaintiff's application for employment as an officer was initially rejected because he was overweight. Plaintiff was hired after having lost some weight and apparently he was hired pursuant to a stipulation that he would not again become overweight. On April 1, 1976, specific minimum-maximum weight regulations for all commissioned personnel, including plaintiff, were established as part of the Manual of Policies and Procedures.[1]

For a male officer of plaintiff's height (5′5″) the chart provided a weight range of

---

1. "§ 14–30 PHYSICAL REQUIREMENTS FOR COMMISSIONED PERSONNEL

Effective April 1, 1976, all commissioned members of this department shall not exceed the below indicated maximum weight standards by more than ten percent, and shall meet other physical requirements and standards as prescribed by the Chief of Police. In regards to the weight standards, each member of this department could be required at the direction of a commanding officer to be examined by a physician to be chosen by this department to see that he has met the weight requirement for his height, after which time he will be given a sufficient amount of time to comply with the standard. If after notice is given and the expiration of the time allotted the commissioned officer fails to comply, disciplinary action can be taken unless there is proof shown by that commissioned officer that there is a just and sufficient reason that he cannot comply, to be supported by his own physician and one chosen by this department."

The chart accompanying the rule provided different standards for men and women.

minimum: 128 pounds, maximum: 171 pounds. Applying the 10% allowance to this range, plaintiff could have weighed a maximum of 188 pounds and still have been in compliance with the regulation standards. In November 1976 plaintiff was first informed that his weight exceeded the allowable maximum for his height. He was given 90 days in which to comply with the regulation. On June 24, 1977—seven months from the time of initial notice—plaintiff was informed that he would suffer the loss of six recreational days as a result of his inability to lose weight. Plaintiff appealed to the Personnel Commission of the City of Florissant and, following a hearing, the Commission sustained the Police Chief's disciplinary order. The Commission found that plaintiff "was given ample time *to at least* make an attempt to lose weight or offer evidence from a doctor of his choice that, for some reason, he was unable to physically lose or make an attempt to bring himself to the proper weight guidelines . . .". (Emphasis in the original). The Commission confirmed the finding that plaintiff was in violation of Section 14–30.

At the Personnel Commission's hearing, the City offered into evidence the regulation, reports of Officer Gray's weight at various intervals following his initial notice to comply, and evidence showing that Gray actually gained weight following the first notification. Plaintiff confined his evidence to that which tended to show that he was a good officer and that his weight had not affected his ability to function as an officer.

On appeal, plaintiff raises two points which, as alleged in the brief, overlap. However, we perceive plaintiff's points to be that (1) the rule is unconstitutional on its face and that the trial court erred in failing to rule on the constitutional issue, and (2) the application of the rule to him is arbitrary and capricious.

 Since plaintiff did not properly assert his constitutional claim in his Petition for Review, it was not preserved for circuit court review and thus the court committed no error by not expressly ruling on it. To properly raise a constitutional question plaintiff is required to: (1) raise the constitutional question at the first available opportunity; (2) designate specifically the constitutional provision claimed to have been violated, such as by explicit reference to the article and section or by quotation of the provision itself; (3) state the facts showing the violation; (4) preserve the constitutional question throughout for appellate review. *City of St. Louis v. Butler Company,* 358 Mo. 1221, 219 S.W.2d 372 (Mo. banc 1949); *Perez v. Webb,* 533 S.W.2d 650 (Mo.App.1976).

 Plaintiff's Petition for Review states only that the action of the agency "is violative of constitutional provisions." Such allegations do not comply with the second requirement set forth in *City of St. Louis v. Butler Company, supra,* for preserving constitutional questions for review. Furthermore, courts reviewing administrative decisions are not required to scour the record to perceive exactly what constitutional question a litigant is raising. *Perez v. Webb, supra.*

Although the constitutional claim has not been properly preserved, we have nevertheless considered the substance of plaintiff's constitutional challenge. In his first point on appeal, plaintiff states only that the regulation creates an irrebuttable presumption violating his rights to due process. Plaintiff relies upon *Turner v. Department of Employment Security and Board of Review of the Industrial Commission of Utah,* 423 U.S. 44, 96 S.Ct. 249, 46 L.Ed.2d 181 (1975) as authority for this due process challenge. In *Turner,* the Supreme Court struck down a Utah statute which made pregnant women ineligible for unemployment benefits for a period extending from 12 weeks before the expected date of birth until six weeks after childbirth. The Court held the statute an unconstitutional violation of the Fourteenth Amendment noting that "freedom of personal choice in matters of marriage and family life is one of the liberties protected by the Due Process Clause." Id. at 46, 96 S.Ct. at 250.

*Turner* is, however, inapplicable to this case. In *Weinberger v. Salfi,* 422 U.S. 749,

95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), the Supreme Court drew a distinction between those cases involving irrebuttable presumptions impinging upon fundamental rights pertaining to matters of marriage and family life and those wherein legislative choices concerning matters of economics, business and social policy were involved. In the latter category of cases, the Court held that the appropriate standard of review was whether the regulation in question bore any rational relationship to a legitimate legislative goal, and not the more exacting scrutiny applied in cases like *Turner*.

Under the rational relationship standard, plaintiff bears the burden of proving that the challenged regulation is irrational and he must negative every conceivable basis upon which the rule may be justified. *Barhorst v. City of St. Louis*, 432 S.W.2d 843 (Mo. banc 1967). The fact that a rule-making body has not stated any specific policy goal is not fatal to a finding that a regulation is valid. In reviewing the regulation, if there is any reasonable basis upon which it may constitutionally rest, the court must assume that the rule-making body had such facts in mind and passed the rule pursuant thereto. *State v. Day-Brite Lighting, Inc.*, 362 Mo. 299, 240 S.W.2d 886, 893 (Mo. banc 1951) aff'd 342 U.S. 421, 72 S.Ct. 405, 96 L.Ed. 469 (1952) reh. den. 343 U.S. 921, 72 S.Ct. 674, 96 L.Ed. 1334 (1952).

The regulation challenged here clearly fits within the category of requirements addressing economic, business and social policy. The City has a legitimate business interest in employing physically fit officers in order to avoid potentially higher insurance rates and to avoid work day losses due to officers' absence from the job. In *Metropolitan Dade County v. Wolf*, 274 So.2d 584, 585 (Fla.Dist.Ct.App.1973), cert. den. 414 U.S. 1116, 94 S.Ct. 849, 38 L.Ed.2d 743 (1973) the court stated:

> [R]egulation relating to weight or overweight, like other health requirements, may properly be made a condition of employment, since there is a reasonable basis to conclude that one who is obese or overweight, as for other health conditions, is thereby more likely to become disabled during employment, to the detri-

ment of the county financially and otherwise. As such, the regulation can be said to be grounded on business necessity. [citations omitted].

Moreover, the City could well have concluded that the risk of danger in the line of duty to an officer who is physically overweight would be too great and that some regulation would be required, therefore, to insure a measure of safety for the officer's own protection. Finally, the City may have a particular interest in maintaining a certain appearance for its police force, so that public confidence in the capability of that force is not diminished.

We conclude, therefore, that the regulation rationally relates to conceivable, legitimate regulatory goals and that the regulation does not offend due process. We do note that regulations pertaining to weight have been invalidated in some cases. However, those cases have involved weight regulations that disproportionately affected women by excluding them from certain occupations and the regulations were struck down on the basis of sex discrimination and violation of equal protection. See, e. g: *Dothard v. Rawlinson*, 433 U.S. 321, 97 S.Ct. 2720, 53 L.Ed.2d 786 (1977). The regulation challenged here does not suffer from such defects. We believe that a careful reading of *Dothard* supports the establishment of weight and height regulations such as the one we are confronted with here. In fact, we find in a concurring opinion in *Dothard* the following language:

> I do not believe—and do not read the Court's opinion as holding—that all or even many of the height and weight requirements imposed by States on applicants for a multitude of law enforcement agency jobs are pretermitted by today's decisions.

Id. at 337, 97 S.Ct. at 2731.

The regulation does not offend due process nor does it violate any fundamental or protected right. Plaintiff's constitutional challenge fails.

Plaintiff's remaining challenge is that the regulation was arbitrarily and capriciously applied by the Commission. Our standard of review on this question is set

forth in § 536.140 RSMo. 1969. We are limited to a determination of whether the Personnel Commission's decision was supported by competent and substantial evidence, whether it was arbitrary or capricious, or whether it was an abuse of discretion. *Hermel, Inc. v. State Tax Commission,* 564 S.W.2d 888 (Mo. banc 1978).

We rule against plaintiff on this point. Plaintiff was given ample notice of his non-compliance with the weight regulation and an opportunity of 90 days in which to comply. In fact, the record indicates that plaintiff was given until June, some 6 months, before the City finally acted by imposing a penalty for his failure to comply. Furthermore, plaintiff was afforded an opportunity at the Personnel Commission hearing to present medical evidence that he was physically incapable of losing weight in order to place himself in compliance with the regulation. The evidence also clearly supports the determination that plaintiff was not in compliance with the regulation. On the basis of the record before us, we cannot conclude that the Personnel Commission's action was arbitrary or capricious.

Judgment affirmed.

GUNN and CRIST, JJ., concur.